Jonathan Kastenbaum, Administrator of
the Estate of MAKRUFATUL YETI SRIANINGSIH, deceased,

        Plaintiff,

v.                              Civil Action No.: 1:23-cv-00051-CMH-WEF

THE BOEING COMPANY,        Removed from the Circuit Court for the County
                                    of Arlington, Virginia, Case No. CL23000091-00

        Defendant.

_____/

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

Plaintiff, Jonathan Kastenbaum, Administrator of the Estate of MAKRUFATUL YETI SRIANINGSIH, deceased, ("Plaintiff") through undersigned counsel and pursuant to 20 U.S.C. § 1447, moves for an Order remanding this case to the Circuit Court of Arlington County, Virginia.

The instant action is for wrongful death and survival damages, based upon strict product liability and negligence, related to the crash of a domestic flight in Indonesia in which plaintiff's decedent was killed. This action was originally filed in state court in Arlington County on January 6, 2023. Defendant The Boeing Company ("Boeing") removed the action to this Court on the basis of admiralty jurisdiction, 28 U.S.C. § 1333(1) and diversity of citizenship, 28 U.S.C. § 1332. The action was not removable on either claimed basis, and remand is required.

Boeing failed to meet the stringent burden of demonstrating that federal jurisdiction exists on either of the bases claimed in its Notice: admiralty jurisdiction pursuant to 28 U.S.C. § 1333, or diversity jurisdiction pursuant to 28 U.S.C. 1332(a). Admiralty jurisdiction does not exist because the location of the alleged tort occurred on land and the underlying activity does not bear a significant relationship to traditional maritime activity. Even if admiralty jurisdiction did apply

as a *prima facie* matter, removal would be precluded by the "saving to suitors" clause of § 1333, which reserves for state courts concurrent jurisdiction over *in personam* admiralty suits. Boeing's attempt to remove on the basis of diversity jurisdiction must also fail because it is barred by the forum defendant rule, 28 U.S.C. § 1441. Indeed, the District Court for the Northern District of Illinois recently remanded a materially similar case following a virtually identical removal effort by Boeing.

For these reasons and those that follow in the attached Memorandum, jurisdiction in this Court is not proper and Boeing's removal effort must fail.

### **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO REMAND**

## I.    BACKGROUND

This case arises from the tragic crash of a Boeing aircraft off the coast of Jakarta on January 9, 2021. Complaint ¶¶ 1–3. Sriwijaya Air Flight SJ 182 was a Boeing 737-500 aircraft that departed from Jakarta, Indonesia bound for Pontianak, Indonesia, carrying 50 passengers and 12 crew members. *Id.* ¶¶ 2, 29. As the aircraft was ascending, the autothrottle system failed, causing the lever on the left engine throttle to move back, reducing thrust in the left engine, while the right-side lever did not move back. *Id.* ¶¶ 30–32. The aircraft experienced asymmetrical and unequal thrust between the left and right engines, which continued throughout the short duration of the flight. *Id.* ¶¶ 33–34. Once the plane reached 10,000 feet in altitude, the autopilot system turned off, causing the plane to make a sharp roll to the left and lose control. *Id.* ¶¶ 35–36. Four minutes after taking off from Jakarta, the aircraft lost contact with ground control and thereafter plunged 10,900 feet in twenty-two seconds before crashing. *Id.* ¶¶ 37–38. All 62 occupants of the aircraft are presumed or confirmed dead. *Id.* ¶ 4.

Plaintiff filed suit on January 6, 2023 in the Circuit Court for the County of Arlington, Virginia, where Boeing recently relocated their global headquarters. Boeing snap removed the action, citing both admiralty jurisdiction and diversity jurisdiction. *See* Boeing's Notice of Removal ("Notice") (ECF 1). Now, because jurisdiction over this action does not properly lie in federal court under either of Boeing's asserted bases, Plaintiff moves this Court to remand the action to the Circuit Court for the County of Arlington.

## II.    ARGUMENT

Boeing has failed to meet the stringent burden of demonstrating that federal jurisdiction exists on either of the bases claimed in its Notice: admiralty jurisdiction pursuant to 28 U.S.C. § 1333, or diversity jurisdiction pursuant to 28 U.S.C. 1332(a). Admiralty jurisdiction does not exist because the location of the alleged tort occurred on land and the underlying activity does not bear a significant relationship to traditional maritime activity. Even if admiralty jurisdiction did apply, removal would be precluded by the "saving to suitors" clause of § 1333, which reserves for state courts concurrent jurisdiction over *in personam* admiralty suits. Boeing's attempt to remove on the basis of diversity jurisdiction must also fail because it is barred by that forum defendant rule.

### A.  Removal Standards

"Federal courts, unlike state courts, are courts of limited jurisdiction with specific jurisdictional requirements and limitations." *United States v. Mitchell*, 683 F. Supp. 2d 427, 428 (E.D. Va. 2010) (citing *Exxon Mobil Corp. v. Allapattah Servs.*, Inc., 545 U.S. 546, 552 (2005)). Consistent with this principle, federal courts "possess *only* that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations removed and emphasis added). The federal courts have

removal jurisdiction over state court actions "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a).

When a plaintiff challenges removal, the burden lies squarely with the defendant to prove that removal was proper. *See Mulcahey v. Columbia Organic Chemicals Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921)). The Fourth Circuit has made clear that federal courts "are obliged to construe removal jurisdiction strictly because of the significant federalism concerns implicated." *Maryland Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005). Accordingly, "[i]f federal jurisdiction is doubtful, a remand [to state court] is necessary." *Id; see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

For the purposes of this motion to remand, Plaintiff's allegations should be accepted as true. *See Dart Cherokee Basin Operating, LLC v. Owens*, 574 U.S. 81 (2014); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 291, 58 S. Ct. 586, 591, 82 L. Ed. 845 (1938) ("[T]he status of the case as disclosed by the plaintiff's complaint is controlling in the case of a removal . . . ."); *Robinson v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, No. 21-CV-1601-LKG, 2021 WL 5957827, at *1 n.1 (D. Md. Dec. 16, 2021) ("The facts . . . are derived from the complaint and are taken as true for purposes of resolving the pending [motion to remand.]").

**B. Admiralty Jurisdiction Does Not Exist Over This Claim**

Boeing first seeks to remove this action pursuant to 28 U.S.C. § 1333(1), which provides that federal district courts "have original jurisdiction . . . of . . . [a]ny civil case of admiralty or maritime jurisdiction . . . ." Namely, Boeing argues that the alleged tort occurred "at least in part 'on navigable waters,'" and that Flight 182 bears a "substantial relationship to traditional maritime activity" because "[b]efore the advent of aircraft, such a journey would have been made by an

ocean-going vessel . . . ." Notice at 4. For the reasons that follow, Boeing's invocation of admiralty jurisdiction is without merit as a basis for removal.

A party seeking to invoke federal admiralty jurisdiction over a tort claim must "satisfy conditions both of location and of connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995) (citing *Sisson v. Ruby*, 497 U.S. 358, 363–67 (1990)); *see also Exec. Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249 (1972).

In *Executive Jet*, the Supreme Court discussed at length the unique challenges presented by aviation cases in the context of admiralty jurisdiction. 409 U.S. 249, 261–68 (1972). The Court made clear that "the mere fact that the alleged wrong occurs or is located on or over navigable waters—whatever that means in an aviation context—is not of itself sufficient to turn an airplane negligence case into a maritime tort." *Id.* at 268 (internal quotation marks omitted). Thus, in addition to establishing that the locality of the tort was on or over navigable waters, the party claiming admiralty jurisdiction must additionally satisfy the "connection test," or prove that "the wrong bear[s] a significant relationship to traditional maritime activity" and "unless such a relationship exists, claims arising from airplane accidents are not cognizable in admiralty . . . ." *Id.* at 268. The Court did not precisely outline what constitutes a significant relationship to traditional maritime activity in the aviation context but explained that "neither the fact that the plane goes down on navigable waters nor the fact that the negligence occurs while a plane is flying over such waters is enough to create such a relationship to traditional maritime activity as to justify invocation of admiralty jurisdiction." *Id.* at 270–71. Finally, the Court in *Executive Jet* held that there is no significant relationship between an event occurring to a land-based plane flying from one point to another within the continental United States and traditional maritime activity

involving navigation and commerce on navigable waters. *Id.* at 273. Thus aviation tort claims arising from such flights are expressly excluded from admiralty jurisdiction. *Id.* at 274.

Under the above standards, Boeing cannot carry its burden of proof of establishing admiralty jurisdiction because (1) the alleged underlying tort occurred on the land, and (2) there is no substantial relationship between a domestic Indonesian flight and traditional maritime activity.

### 1. *The alleged tort occurred on land, not on navigable waters.*

Boeing's Notice breezes through the locality requirement in conclusory fashion, declaring it satisfied simply because Flight 182 "crashed into the Java Sea while flying from one Indonesian island to another." Notice at 4. Boeing's claim that the locality requirement is met simply because the alleged tort occurred "at least in part 'on navigable waters,'" *id.*, is wrong for two reasons. First, Boeing's articulation of the locality test is incomplete. Second, the alleged wrong did not occur on or over navigable waters at all—it occurred on and over the land.

Boeing's cursory treatment of the locality test fails to account for precisely where the alleged wrong occurred, focusing only on where Flight 182 ultimately crashed. *Executive Jet* provides guidance on the proper application of the locality requirement here. 409 U.S. 249, 268 (1972). At issue in *Executive Jet* was whether admiralty jurisdiction applied to the crash of a domestic flight caused by the ingestion of seagulls into the engine as it was taking off. *Id.* at 250. Because the plane ultimately landed in Lake Erie, the Plaintiffs sought admiralty jurisdiction under 28 U.S.C. 1333(1). *Id.* at 250–51.

Although the Supreme Court did not specify where the wrong occurred in *Executive Jet*, it did reference other aviation cases in which the courts found admiralty jurisdiction because "the alleged negligence became operative while the aircraft was on or over navigable waters." *Id.* at 264. Moreover, the Supreme Court did not dispute or disturb the lower courts' holdings that the

alleged tort—failure to keep the runway clear of birds or to warn the pilot of their presence—occurred on land and not water. *Id.* at 252 (quoting the district court's conclusion that "the operative facts of the claim in this case are concerned with the land-connected aspects of air-commerce"); *id.* (noting that "[t]he Sixth Circuit affirmed on the ground that 'the alleged tort in this case occurred on land before the aircraft reached Lake Erie . . . .'").

Therefore, *Executive Jet* makes clear that it is the location of the *conduct* causing the injury, not the location of the resulting *injury*, that determines the application of the locality test in any given case. *See also, e.g.*, *Abdelnour v. Bassett Custom Boatworks, Inc.*, 614 F. Supp. 2d 123, 125 (D. Mass. 2009) (finding the locality requirement not satisfied where plaintiff purchased a boat that exhibited cracks in the decking before the boat was placed into the water, even if "the cracks may have become worse while the boat was on navigable water").

Subsequent cases have affirmed this interpretation of the locality test. In *Grubart v. Great Lakes Dredge & Dock Company*, water from the Chicago River flooded into a freight tunnel and then into basements of buildings in downtown Chicago. 513 U.S. 527, 529 (1995). The flooding was the result of events that occurred several months earlier, when the defendant used a crane sitting on a barge in the river to drive piles into the riverbed above the tunnel. *Id.* The Supreme Court held that the locality test was satisfied because the alleged tort occurred on the river, even though the resultant damage occurred on land several months later. *Id.* at 530.

*Lu Junhong v. Boeing Company* provides another example of "an accident apparently caused by events over water, but producing injury on land" that falls within the ambit of § 1333. 792 F.3d 805, 807 (7th Cir. 2015). There, a Boeing aircraft hit a seawall separating the ocean from the end of a runway as it descended into San Francisco International Airport, causing the tail to break off and resulting in the deaths of three passengers and seriously injuring 49 others. *Id.* The

principal cause of the accident was determined to be pilot error—the pilots approached too low and slow over the water. *Id.* The plaintiffs also alleged that the autothrottle system disengaged, causing the plane to descend faster than the pilots appreciated. *Id.* at 814. The Seventh Circuit concluded that, given the available findings, it was "possible for Boeing to show that th[e] accident was caused by, or became inevitable because of, events that occurred over navigable water." *Id.* at 815.

Here, Boeing's alleged wrongdoing concerns its design, manufacture, and sale of the 737 aircraft, including a defective autothrottle and manuals. *See* Complaint ¶¶ 32, 54–55, 65–66. There is no dispute that this alleged wrongful conduct occurred at Boeing's facilities on land. Boeing has not alleged—nor could it at this stage of the litigation—that its alleged wrongdoing occurred on water, much less in the Java Sea. Moreover, Plaintiff's Complaint further alleges that the autothrottle failure occurred "[a]s the subject aircraft was ascending, just minutes after takeoff," while the aircraft was still over the land. *Id.* ¶ 30. The aircraft lost contact with ground control just four minutes after leaving Jakarta. *Id.* ¶ 37. Even the map Boeing included in its Notice illustrates that the majority of the flight path occurred over land on the outskirts of Jakarta, with only the final moments of the flight taking place over water. *See* Notice at 2.

In short, here, as in *Executive Jet*, the alleged wrong occurred over land and subsequently caused injuries that occurred in the water. Accordingly, the locality requirement is not met, precluding admiralty jurisdiction in this case.

## 2. *There is no significant relationship to maritime activity.*

Because the initial "locality test" is not satisfied in this case, it is not necessary for the Court to proceed to the "connection test." Nevertheless, and for thoroughness, it bears noting that

Boeing has also failed to carry its burden of establishing that there exists a "significant relationship" between the accident flight and traditional maritime activity.

Boeing suggests a bright-line rule that would result in a finding of admiralty jurisdiction in virtually any aviation case in which a plane passed over a body of navigable water. *See* Notice at 4. Neither the Supreme Court nor the Fourth Circuit have adopted such an expansive reading of admiralty jurisdiction. Indeed, the Supreme Court expressed a need to "proceed with caution" in determining whether to expand admiralty jurisdiction. *Exec. Jet*, *Exec. Jet*, 409 U.S. at 272 (quoting *Victory Carriers, Inc. v. L.*, 404 U.S. 202, 212 (1971)).

In *Executive Jet*, the Supreme Court withheld judgment as to "whether an aviation tort can ever, under any circumstances bear a sufficient relationship to traditional maritime activity to come within admiralty jurisdiction . . . .". *Id.* at 272. It did make clear, however, that a land-based, domestic flight within the continental United States would not bear the requisite significant relationship with traditional maritime activity involving navigation and commerce on navigable waters. *Id.* at 274. The Court later characterized the activity in *Executive Jet* as "far removed from anything traditionally maritime." *Grubart*, 513 U.S. at 542. And the Seventh Circuit observed in *Tagliere v. Harrah's Illinois Corporation* that "[t]he main practical use of the "connection test" has been to expel from the admiralty jurisdiction freak cases," such as the crash in *Executive Jet*. 445 F.3d 1012, 1014 (7th Cir.).

Other cases have followed *Executive Jet* in holding that admiralty jurisdiction didn't exist over claims arising from domestic flights, even where those flights traversed bodies of water that would have traditionally been navigable by watercraft. In *Teachey v. United States*, the court declined to extend admiralty jurisdiction over claims arising from the crash of a Coast Guard helicopter traveling from Key West to St. Petersburg, Florida. 363 F. Supp. 1197, 1198 (M.D. Fla.

1973). *American Home Assurance Company v. United States* involved claims arising from the loss of an aircraft traveling from Atlantic City, New Jersey, to Block Island, New York (an island accessible only by air or sea). 389 F. Supp. 657, 658 (M.D. Pa. 1975). Although the crash was alleged to have been caused by adverse weather—presumably encountered while the aircraft was above navigable water—the court rejected the plaintiffs' efforts to draw their claims within the ambit of admiralty jurisdiction. *Id.* The court noted that "[t]he drift of the Executive Jet opinion is that the Supreme Court has serious doubts as to whether airplane accidents are proper subjects of admiralty suits" and did not agree that "the fact that Block Island was separated from the mainland [was] sufficient alone to distinguish [the] case from Executive Jet and support a finding that it may be brought in admiralty." *Id.*

In its Notice, Boeing cites a few non-binding cases that have found admiralty jurisdiction in international and/or transoceanic flights. *See, e.g.*, *Roberts v. United States*, 498 F.2d 520, 524 (9th Cir. 1974) (international, transoceanic flight from California to Vietnam); *Williams v. United States*, 711 F.2d 893, 896 (9th Cir. 1974) (transoceanic flight from California to Hawaii). But the subject flight here was, of course, not a transoceanic or international flight. Notably, the two other cases Boeing cites—*Miller v. United States*, 725. F.2d 1311, 1315 (11th Cir. 1984) and *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207 (1986)—involved interpretations of the Suits in Admiralty Act and the Death on the High Seas Act, respectively, and not admiralty jurisdiction under 28 U.S.C. § 1333.

Like the flights in *Executive Jet* and *American Home*, the flight at issue in this case was a domestic flight within Indonesia that did not traverse international waters. *See* Complaint ¶ 2. *See Exec. Jet*, 409 U.S. at 274; *American Home*, 389 F. Supp. at 658. As those cases make clear, the mere fact that the flight was between two islands within Indonesia is not dispositive of the

admiralty jurisdiction analysis. And Boeing provides no justification for distinguishing the domestic flights in those cases from the domestic flight here. Flight 182 was a domestic, non-transoceanic flight and bears no "significant relationship" to traditional maritime activity. Accordingly, admiralty jurisdiction does not apply to this action.

### C. Even If the Court Finds Admiralty Jurisdiction, the "Saving to Suitors" Clause Bars Removal

Even if admiralty jurisdiction did apply to this action, removal is precluded pursuant to the "saving to suitors" clause of the admiralty statute. *See* 28 U.S.C. ¶1333(1) (district courts have admiralty and maritime jurisdiction "saving to suitors in all cases all other remedies to which they are otherwise entitled").

The Supreme Court has held that admiralty jurisdiction is exclusive to federal courts only over *in rem* admiralty actions, while the state courts have concurrent jurisdiction over *in personam* admiralty actions. *Madruga v. Superior Court*, 346 U.S. 556, 560–61 (1954); *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 445 (2001). Furthermore, because admiralty cases do not arise under the Constitution or laws of the United States, there is no federal question jurisdiction over admiralty actions and generally are not removable under the federal question removal statute, 28 U.S.C. § 1441. *See Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 372 (1959) ("By making maritime cases removable to the federal courts it would make considerable inroads into the traditionally exercised concurrent jurisdiction of the state courts in admiralty matters—a jurisdiction which it was the unquestioned aim of the saving clause of 1789 to preserve.").

Accordingly, plaintiffs have the choice of bringing *in personam* maritime claims in either a state or federal forum, but a defendant may only remove a case in which an *in personam* maritime claim is brought when there is an *independent* ground for federal jurisdiction. *See In re Lockheed Martin Corp.*, 503 F.3d 351, 354 (4th Cir. 2007) ("The effect of the saving-to-suitors clause . . . is

to give a maritime plaintiff several options when bringing suit."). Put differently, the mere existence of admiralty jurisdiction is not a valid basis for removal of an action from state court to federal court.

*Romero's* principle that admiralty actions are not removable has been consistently followed by the Courts of Appeal. *See, e.g.*, *Edmondson v. Magnolia Marine Transp. Co.*, 359 F.3d 1237, 1241 (10th Cir. 2004); *In re Chimenti*, 79 F.3d 534, 538 (6th Cir. 1996); *Linton v. Great Lakes Dredge & Dock Co.*, 964 F.2d 1480, 1491 (5th Cir. 1992). In *Lu Junhong*, discussed above, the Seventh Circuit found admiralty jurisdiction over the plaintiffs' claims, reversing the district court's remand order. 792 F.3d at 817. The court noted, however, that "perhaps it would be possible to argue that the savings-to-suitors clause forbids removal," but the plaintiffs there failed to raise such an argument. *Id.* at 818.

Despite this clear precept from *Romero*, some confusion emerged with regard to the application of the "saving to suitors" clause following the 2011 amendment of the removal statute. As Boeing indicates in its Notice, the removal statute was amended to limit the forum defendant rule to cases where removal is based on diversity alone. *See Boakye v. NCL (Bahamas Ltd.)*, 295 F. Supp. 3d 1342, 1346 (N.D. Ga. 2018), ("Whereas before the amendment, *no* case could be removed if a defendant was in his home state, *unless* there was a federal question, now, *all* cases involving a home state defendant in which a federal court could have had original jurisdiction can be removed *unless* jurisdiction is based solely on diversity.") (italics in original). Accordingly, this raised the question of whether the now-broader removal statute overrides a plaintiff's ability to rely on the "saving to suitors" clause to prevent the removal of state court admiralty claims. *See generally Cassidy v. Murray*, 34 F. Supp. 3d 579, 582 (D. Md. 2014) (discussing "the substantial

amount of legal analysis" regarding "[t]he interplay between the savings clause and the federal removal statute").

Despite this initial confusion, the answer from the vast majority of courts has been a resounding "no." Although a handful of district courts held that the 2011 amendment "altered traditional removal jurisdiction in a manner that now permitted the removal of maritime claims to federal court, without needing any independent basis for federal jurisdiction," *see Angelopoulos*, 77 F. Supp. 3d at 490 (collecting cases), a much larger majority of district courts around the country have held the view that admiralty claims are not removable when a plaintiff invokes the "saving to suitors" clause, absent an independent basis for the district court to exercise jurisdiction. *See, e.g.*, *Angelopoulos*, 77 F. Supp. 3d 481, 490 (E.D. Va. 2015); *Cassidy v. Murray*, 34 F. Supp. 3d 579, 583 (D. Md. 2014); *Curry v. Boeing*, 542 F. Supp. 3d 804, 819–20 (N.D. Ill. 2021); *Boakye*, 295 F. Supp. 3d at 1348; *Forde v. Hornblower New York, LLC*, 243 F. Supp. 3d 461, 467 (S.D.N.Y. 2017); *Brown v. Porter*, 149 F. Supp. 3d 963, 969–70 (N.D. Ill. 2016); *Langlois v. Kirby Inland Marine, LP*, 139 F. Supp. 3d 804, 809 (M.D. La. 2015).

The "saving to suitors" clause clearly bars the removal of admiralty claims and the 2011 amendment to the removal statute did not undermine that rule. Boeing's removal of this action as a purported admiralty claim was improper.

### D. Removal for Diversity Jurisdiction is Barred Because Boeing is a Forum Defendant

Boeing's final grasp at a valid basis for removal—diversity jurisdiction—must likewise fail because Boeing is a resident of this forum and removal is therefore precluded pursuant to 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of the jurisdiction under [§ 1332(a)] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.").

Boeing attempts to sidestep this prohibition, citing two reasons: First, that the forum defendant rule is inapplicable because removal is based on admiralty jurisdiction *and* diversity jurisdiction. Second, that the forum defendant rule is inapplicable because Boeing has not yet been served with a copy of the complaint. Both reasons are unavailing.

### 1. *The forum defendant rule applies.*

Boeing begins by arguing that it seeks removal on the two independent bases of admiralty jurisdiction and diversity jurisdiction, and the bar of the forum defendant rule applies only to diversity actions. Notice at 6. But this effort to circumvent the forum-defendant rule fails for several reasons.

First, as detailed above, there is no admiralty jurisdiction over this claim. *See Executive Jet*, 409 U.S. 249; *cf. Abdelnour*, 614 F. Supp. 2d 123. Second, even if there were admiralty jurisdiction, removal is precluded under the "saving to suitors" clause. 28 U.S.C. § 1333(1). Thus, only diversity jurisdiction remains as a potential ground for removal. As several courts have held, Boeing is not permitted to use an invalid claim of admiralty jurisdiction to circumvent the forum defendant rule.

The court in *International Marine Underwriters v. Southern Drydock, Inc.*, considered and rejected the very same argument Boeing suggests here, dismissing it as "misguided." No. 3:16-cv-220-J-39MCR, 2016 WL 11431679, at *4 (M.D. Fla. 2016). The court further explained that "to accept Defendant's argument would mean to "permit[ ] the very occurrence the Supreme Court attempted to avoid in *Romero*—the evisceration of the savings clause." *Id.* (quoting *Cassidy*, 34 F. Supp. 3d at 583) (alterations in original). Several cases have affirmed that the correct mode of analysis to avoid such a result is to separately consider and decide each basis for removal, *e.g.*, admiralty and diversity. *See, e,g.*, *Speranza v. Leonard*, 925 F. Supp. 2d 266, 27172 (D. Conn.

2013); *Sanders v. Cambrian Consultants (CC) America, Inc.*, 132 F. Supp. 853, 857–58 & n.3 (S.D. Tex. 2015); *Barglowski v. Nealco Int'l LLC*, CIVIL 16-00209 LEK-KSC, 2016 WL 5107043, at *3, 8 (D. Hawaii, Sept. 30, 2016). In each of those cases, the courts found first that removal was improper owing to the "savings to suitors" clause and second that the forum defendant rule barred diversity based on removal. This approach correctly gives effect to both relevant statutes and helps to ensure that any doubts concerning the propriety of removal are resolved in favor of remand. *See Maryland Stadium Auth.*, 407 F.3d at 260.

### 2. *Boeing's snap removal is improper.*

Boeing further contends that its "snap removal" of this action—removing the case to federal court before Plaintiff served Boeing—also precludes application of the forum defendant rule. Notice at 6.

Generally speaking, the purpose of federal diversity jurisdiction is to avoid prejudice to an out of state defendant. *See Lumbermen's Mut. Cas. Co. v. Elbert*, 348 U.S. 48, 54 (1954) (Frankfurter, J., concurring). That concern does not exist when, as here, the defendant is a resident of the forum. Accordingly, removal by such a defendant is expressly prohibited by statute. *See* 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of the jurisdiction under [§ 1332(a)] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."). Defendants occasionally capitalize on the "properly joined and served" clause by "snap removing" the action to federal court before any defendant has received service of process, thus circumventing the prohibition on removal by forum defendants. *See Texas Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 485 (5th Cir. 2020) (describing snap removal). The "properly joined and served" language of § 1444(b)(2) is widely understood to "prevent a plaintiff from blocking removal by joining as a

defendant a resident party against whom it does not intend to proceed, and whom it does not even serve." *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 153 (3d Cir. 2018) (citations removed); *see also Campbell v. Hampton Roads Bankshares, Inc.*, 925 F. Supp. 2d 800, 809 (E.D. Va. 2013) (to ensure that a plaintiff does not use § 1441(b)(2) as a "tool to engineer away federal jurisdiction—any removal-defeating defendant must be '*properly* joined and served.'"). But where, as here, there is only one defendant to the action, no such concern about fraudulent joinder exists.

As courts have pointed out, an overly literal reading of "properly joined and served" leads to absurd results because "permitting removal because the forum defendant is unserved is contrary to the purpose of, and congressional intent behind, § 1441(b)(2)" to prohibit removal when there is a forum defendant. *Campbell*, 925 F. Supp. 2d 800, 809 (holding that, where "the removing defendants and the unserved forum defendant are one and the same," snap removal is "patently absurd").

Accordingly, a substantial contingent of district courts around the country, including several within the Fourth Circuit, have agreed that snap removal by an in-forum defendant is improper. *See, e.g.*, *Spreitzer Properties, LLC v. Travelers Corp*, 599 F. Supp. 3d 774, 783 (N.D. Iowa 2022) ("Here, the Court finds it must read all the statutes addressing diversity of citizenship jurisdiction together to arrive at a proper interpretation of Section 1441(b)(2) to avoid an absurd result."); *Turtle Factory Bldg. Corp. v. McGrath Real Est. Holdings, LLC*, No. 2:20-CV-03099-RMG, 2021 WL 688697, at *3 (D.S.C. Jan. 28, 2021) ("[T]he Court is persuaded by the opinions that find the literal application of § 1441(b)(2) is contrary to congressional intent and creates absurd results."); *In re Roundup Prod. Liab. Litig.*, No. 16-MD-02741-VC, 2019 WL 423129, at *1 (N.D. Cal. Feb. 1, 2019) ("On this issue, which has divided the courts, this Court agrees with

the view that interpreting the statute to permit removal before service of process would create absurd results."); *Teamsters Loc. 677 Health Servs. & Ins. Plan v. Friedman*, No. CV CCB-18-3868, 2019 WL 5423727, at *3 (D. Md. Oct. 23, 2019) ("Such a reading of the forum defendant rule defies common sense and leads to an absurd result contrary to the purpose of the statute."); *Delaughder v. Colonial Pipeline Co.*, 360 F Supp. 3d 1372, 1379 (N.D. Ga. 2018) ("[T]he majority of courts that remanded snap removals did so on a legislative intent rational, agreeing that the literal application of the statutory language favors snap removals."); *Phillips Constr., LLC v. Daniels L. Firm, PLLC*, 93 F. Supp. 3d 544, 553 (S.D.W. Va. 2015) ("[A] literal application of this plain meaning is contrary to congressional intent and creates absurd results."); *Hawkins v. Cottrell, Inc.*, 785 F. Supp. 2d 1361, 1378 (N.D. Ga. 2011) ("allowing a forum defendant who had not been served to remove an action "contravenes the clear and long-standing history behind the forum defendant rule and undercuts its rationale").[1] Notably, several of these decisions post-date and expressly reject certain circuit-court decisions permitting snap removal by in-forum defendants. *See, e.g.*, *Spreitzer Properties*, 599 F. Supp. 3d at 782; *Turtle Factory Bldg. Corp.*, 2021 WL 688697, at *2; *Teamsters Loc. 677 Health Servs. & Ins. Plan*, No. CV CCB-18-3868, 2019 WL 5423727, at *2; *Delaughder*, 360 F Supp. 3d at 1378.[2]

---

[1] *See also Perez v. Forest Laboratories, Inc.*, 902 F. Supp. 2d 1238, 1246 (E.D. Mo. 2012); *Perfect Output of Kansas City, LLC v. Ricoh Americas Corp.*, No.: 12–0189–CV–W–SOW, 2012 WL 2921852, at *6 (W.D. Mo. July 17, 2012); *Ibarra v. Protective Life Ins. Co.*, No. CV–09–049–TUC–CKJ, 2009 WL 1651292, at *3–4 (D. Ariz. June 12, 2009); *Walborn v. Szu*, No. 08–6178(DRD), 2009 WL 983854, at *5 (D.N.J. April 07, 2009); *Sullivan v. Novartis Pharmaceuticals Corp.*, 575 F. Supp. 2d 640, 643 (D.N.J. 2008); *Ethington v. Gen. Elec. Co.*, 575 F. Supp. 2d 855, 864 (N.D. Ohio 2008); *Brown v. Organon USA Inc.*, No. Civ. A. 07–3092(HAA), 2008 WL 2625355, at *8 (D.N.J. June 27, 2008); *Fields v. Organon USA, Inc.*, No. 07–2922(SRC), 2007 WL 4365312, at *4 (D.N.J. Dec. 12, 2007); *Vivas v. Boeing Co.*, 486 F. Supp. 2d 726, 734 (N.D. Ill. 2007); *Oxendine v. Merck*, 236 F. Supp. 2d 517, 526 (D. Md. 2002).

[2] Some Circuit courts have permitted snap removal by in-forum defendants in at least some circumstances. *See Texas Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482 (5th Cir. 2020); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019); *Encompass Ins. Co. v. Stone*

This case illustrates exactly the sort of "patently absurd" results that contravene the clear congressional intent of the forum defendant rule. *Campbell*, 925 F. Supp. 2d at 809. Boeing is the lone defendant in this case, a resident of this forum, and the removing defendant. As another court in this district explained, where "the removing defendant and the unserved forum defendant are one and the same," the practical effect is "permitting a forum defendant to appear and seek federal jurisdiction for an action through removal, whilst simultaneously asserting that it cannot be barred from removing because it has not been properly made party to the action . . . ." *Id.* at 809. Although another court in the Eastern District of Virginia, *Spigner v. Apple Hospitality REIT, Inc.*, reached a different conclusion from *Campbell* and adopted a plain reading of the removal statute, that case did not present the same absurd factual scenario of a lone forum defendant engaging in the snap removal tactic. No. 3:21CV758 (DJN), 2022 WL 1451397, at *5 (E.D. Va. Mar. 1, 2022). Indeed, the *Spigner* court distinguished *Campbell* for exactly that reason, explaining that "pre-service removal does not contravene congressional intent *in this case*." *Id.* at *5 (emphasis added) ("[I]n Campbell, all removing parties constituted forum defendants. In contrast, one of three defendants here, Marriott, is a non-forum defendant."). Therefore, to the extent that *Campbell* and *Spigner* can be reconciled, the two cases stand for the proposition that remand still may be warranted in a case such as this one where the sole defendant—and the removing defendant—is a forum defendant.

Several cases have also highlighted the potential for gamesmanship by defendants, particularly in-forum defendants, that attempt to snap remove cases to federal court. *See, e.g., Timbercreek Asset Mgmt., Inc. v. De Guardiola*, No. 9:19-CV-80062, 2019 WL 947279, at *3

---

*Mansion Rest. Inc.*, 902 F.3d 147 (3d Cir. 2018). The Fourth Circuit has yet to weigh in directly on the issue, but as noted in the main text, courts within this Circuit have correctly rejected efforts by in-forum defendants to "snap remove" cases on diversity grounds.

(S.D. Fla. Feb. 27, 2019) ("[T]he forum defendant rule bars the removal of suits when the forum defendant, engaging in litigation gamesmanship, removes a suit prior to service of process."); *Delaughder v. Colonial Pipeline Co.*, 360 F. Supp. 3d 1372, 1381 (N.D. Ga. 2018) ("The fact that the very words included to prevent gamesmanship have opened an avenue for more gamesmanship is an ironic absurdity that the Court will not enforce simply because the words 'properly joined and served' appear unambiguous in isolation . . . ."); *Schilmiller v. Medtronic, Inc.*, 44 F. Supp. 3d 721, 726 (W.D. Ky. 2014) ("The same consideration against gamesmanship would seem to apply when defendants attempt to use the forum defendant rule to their advantage by monitoring the state court docket and quickly removing an otherwise non-removable action before service can be accomplished."); *Goodwin v. Reynolds*, 757 F.2d 1216, (11th Cir. 2014) ("The only reason this case is in federal court is that the non-forum defendants accomplished a pre-service removal by exploiting, first, Plaintiff's courtesy in sending them copies of the complaint and, second, the state court's delay in processing Plaintiff's diligent request for service."). In each of the district court cases, evidence for gamesmanship by the defendants factored into the courts' ultimate decision to remand the actions. *See, e.g.*, *Timbercreek*, 2019 WL 947279 (gamesmanship was "apparent" where plaintiff attempted to serve defendant nine times at his Atlanta and Florida residences, defendant removed the action five days after the suit was filed, and then waived service of process); *Delaughder*, 360 F. Supp. 3d at 1381 ("While [the defendant] found a possible avenue to take away Plaintiffs' power to decide the forum for this litigation, the Court cannot overlook the clear gamesmanship present in this case.").

Boeing's strategy in this action exemplifies the exact sort of gamesmanship these courts have cautioned against. Victims of Flight 182 have filed cases in state courts as the chosen forums for their actions to be adjudicated. But both times, Boeing—as the lone defendant and resident of

the forum—swiftly removed the action to federal court before service of process. This pattern of gamesmanship should not be tolerated or rewarded. *See Schilmiller*, 44 F. Supp. 3d at 727 ("Although [defendants] do not admit to gamesmanship in monitoring the state court docket, their pattern of behavior in jack rabbit removal is obvious. Thus, the court finds that [defendants] have not met their burden of proving that removal based on diversity of citizenship was not in violation of the intent and purpose of the forum defendant rule.").

It also bears noting that Boeing's snap removal of this case is improper for an additional reason: as several courts have noted, snap removal by a lone in-forum defendant is at odds not only with congressional intent, but also with the text of 28 U.S.C. § 1441(b). *See Bowman v. PHH Mortg. Corp.*, 423 F. Supp. 3d 1286 (N.D. Ala. 2019); *Gentile v. Biogen Idec, Inc.*, 934 F. Supp. 2d 313 (D. Mass. 2013); *Hawkins v. Cottrell, Inc.*, 785 F. Supp. 2d 1361 (N.D. Ga. 2011).[3] In these cases, the courts have correctly considered the entire statutory phrase rather than focusing narrowly on the "properly joined and served" language in isolation. The full text of the relevant subsection instructs courts to determine whether "*any* of the parties in interest properly joined and served as defendants is a citizen of the" forum state. *Bowman*, 423 F. Supp. 3d at 1289 (citing 28 U.S.C. § 1441(b)(2) (emphasis added). In this context as a pronoun, the word "any" means "one or more indiscriminately from all those of a kind." *Id.* (citing Webster's Third New International Dictionary 97 (3d ed. 1986)). "Inherent in the definition [of 'any'] is some number of the kind from which the one or more can be drawn." *Gentile*, 934 F. Supp. 2d at 318. Accordingly, with its use of the term "any," the text assumes that the kind exists—that at least one or more parties in interest have been

---

[3] As the *Bowman* court notes, *Hawkins* analyzed an earlier version of the statute, which was amended in 2011. 423 F. Supp. 3d at 1289 n.3. The *Bowman* court further notes that the *Gentile* court "demonstrates why the change did not affect the analysis." *Id.* (citing *Gentile*, 934 F. Supp. 2d at 318).

"properly joined and served." Accordingly, when there is a forum defendant, at least one defendant must be properly joined and served before removal on the basis of diversity. *Id.* Here, Boeing, as the lone defendant and resident of the forum, removed the action before Plaintiff ever had the opportunity to effectuate service. Because no defendant in this case was "properly joined and served" prior to removal, the case should be remanded.

Additionally, here, Boeing's effort to remove this case implicates this Court's "duty to construe removal jurisdiction strictly and resolve doubts in favor of remand." *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 336 (4th Cir. 2008). To the extent that this Court concludes that the application of the forum-defendant rule here is uncertain, that uncertainty must be resolved in favor of remand. *See Delaughder*, 360 F. Supp. 3d at 1381 ("The snap removal issue is uncertain, and the Court does not discount the arguments on the other side of the divide. That said, in the face of uncertainty, remand is appropriate."). Moreover, this Court should not permit a procedural loophole to undermine Plaintiff's desire to have this case adjudicated in the Circuit Court of the County of Arlington Virginia. *See Akers v. Norfolk & W. Ry. Co.*, 378 F.2d 78, 80 (4th Cir. 1967) (recognizing, in the transfer context, "the primary right of the plaintiff to choose his forum, a selection not easily to be overthrown"); *see also Hawkins v. Cottrell*, Inc., 785 F. Supp. 2d 1361, 1378 (N.D. Ga. 2011) ("Adopting defendant's interpretation would require the court to ignore sound principles of federalism and force cases that are properly the province of state courts into a federal tribunal."). Because the forum defendant rule bars Boeing's removal of this action, because a strict literal reading of the removal statute would lead to absurd results, and because Boeing has engaged in improper gamesmanship, this case should be remanded.

**E. A Recent Order from the Northern District of Illinois Is Instructive.**

Faced with near identical arguments based on the same factual circumstances—the crash of Flight 182—Judge Robert M. Dow, Jr. of the Northern District of Illinois recently concluded that removal was barred on the grounds of the "saving to suitors" clause. *See generally Riyanto v. Boeing Co.*, No. 21-CV-1475, 2022 WL 16635556 (N.D. Ill. Nov. 2, 2022). Notably, Judge Dow did not accept Boeing's arguments on admiralty jurisdiction. Instead, he correctly concluded that the "saving to suitors" clause barred removal "regardless of whether Defendant can satisfy the locality or connection tests." *Id.* at *2.

Judge Dow also gave extensive and well-reasoned treatment to Boeing's contention that the 2011 amendment to § 1441 permits removal by forum defendants, even against plaintiffs invoking the "saving to suitors" clause. *Id.* at *2–6. Each of Boeing's arguments on this issue were thoroughly considered and rejected, supported by extensive case law. The case was remanded to the Circuit Court of Cook County for all further proceedings. *Id.* at 6.

Boeing's effort to remove the instant action therefore invites this Court to assert removal jurisdiction in circumstances where such jurisdiction is not only unsupported by overwhelming precedent, but also directly contrary to the carefully considered decision of the Northern District of Illinois.

## III.  CONCLUSION

For all the reasons discussed in this memorandum, Plaintiff respectfully requests that this Court remand this action to the Circuit Court of Arlington County, Virginia. Plaintiff will separately address other pending motions in this matter concerning a stay of the instant proceedings and the potential creation of a multi-district litigation to oversee federal litigation arising from Flight 182.

Dated: February 6, 2023                    Respectfully submitted,

By: ___/s/ Ashley T. Davis, Esq.
          By Counsel

Ashley T. Davis, Esq. (VSB No. 68078)
Derrick L. Walker, Esq. (VSB No. 46490)
ALLEN, ALLEN, ALLEN & ALLEN P.C.
1809 Staples Mill Road
P.O. Box 6855
Richmond, Virginia 23230
Phone/E-Fax (Ms. Davis) 804-257-7526
Phone/E-Fax (Mr. Walker): 804-257-7514
ashley.davis@allenandallen.com
derrick.walker@allenandallen.com

Steven C. Marks, Esq. (to be admitted pro hac vice)
FL Bar No. 516414
Pablo Rojas, Esq. (to be admitted pro hac vice)
FL Bar No. 1022427
PODHURST, ORSECK, P.A.
One S.E. Third Avenue, Suite 2300
Miami, FL 33131
Firm: (305) 358-2800
Direct (Mr. Marks): (305) 439-1401
Direct (Mr. Rojas): (240) 863-4893
Fax: (305) 358-2382
Smarks@podhurst.com
Projas@podhurst.com

***Attorneys for Plaintiff***